IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| GREENWICH INSURANCE COMPANY and INDIAN HARBOR INSURANCE COMPANY | PLAINTIFFS |
| v. | CAUSE NO. 1:14CV297-LG-JCG |
| CAPSCO INDUSTRIES, INC., and GROUND CONTROL, LLC | DEFENDANTS |
| GROUND CONTROL, LLC | COUNTER-PLAINTIFF |
| v. | |
| GREENWICH INSURANCE COMPANY and INDIAN HARBOR INSURANCE COMPANY | COUNTER-DEFENDANTS |

**MEMORANDUM OPINION AND ORDER CONCERNING THE
PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**BEFORE THE COURT** are the Motion for Summary Judgment [127] filed by Defendant/Counter-Plaintiff Ground Control and the Motion for Partial Summary Judgment [131] filed by Plaintiffs/Counter-Defendants Greenwich Insurance Company and Indian Harbor Insurance Company (hereafter collectively referred to as "the Insurers"). The parties dispute whether the Insurers have a duty to defend Capsco Industries in a state court lawsuit filed by Ground Control. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the Insurers do not have a duty to defend

Capsco in Ground Control's state court action. The Insurers' Motion for Partial Summary Judgment is granted, and Ground Control's Motion for Summary Judgment is denied.

## BACKGROUND

This insurance coverage dispute arose out of the Margaritaville Spa and Hotel construction project in Biloxi, Mississippi. The Insurers issued commercial general liability policies to one of the project's subcontractors, Capsco Industries, Inc. W.G. Yates & Sons Construction Company served as the project's general contractor, and Harrah's Entertainment was the project owner. Capsco retained a sub-subcontractor, Ground Control, "to provide labor and materials for removal or capping of existing structures and piping, installation of storm drainage piping and structures, potable water lines and structures, and sanitary sewer lines and structures . . . ." (Supp. Compl. at 4, ECF No. 20-2). Yates terminated Ground Control's involvement with the project due to alleged safety violations and failed drug tests. *Ground Control, LLC v. Capsco Indus., Inc.*, 120 So. 3d 365, 367 (Miss. 2013).

### A. UNDERLYING STATE COURT ACTION

Ground Control filed a lawsuit in state court against Capsco, Yates, Harrah's, and others involved with the project. The state court granted summary judgment in favor of Capsco, Yates, and Harrah's, and Ground Control appealed. The Mississippi Supreme Court reversed and remanded the case to the Circuit Court holding that: (1) Miss. Code Ann. § 31-3-15 rendered the subcontract between

Ground Control and Capsco null and void due to the parties' failure to obtain certificates of responsibility; (2) Ground Control should be permitted to proceed with a claim against Capsco for the value of what it expended in labor and supplies on the project pursuant to the doctrine of unjust enrichment and/or quantum meruit; and (3) the grant of summary judgment in favor of Yates and Harrah's was improper due to the Circuit Court's failure to give proper notice pursuant to Miss. R. Civ. P. 12(b). *See generally Ground Control, LLC v. Capsco Indus., Inc.*, 120 So. 3d 365 (Miss. 2013).

On remand, the state trial court initially granted Ground Control permission to file a supplemental complaint raising numerous tort, contractual, and statutory claims but later determined that Ground Control should only be permitted to present evidence under a quantum meruit theory of recovery at trial. A jury awarded Ground Control $862,228 and apportioned fault as follows: 95.75% liability to Capsco, 4.25% liability to Yates, and 0% liability to Harrah's. The parties, who disputed whether Ground Control should be permitted to pursue additional claims, filed numerous post-trial motions that caused the judgment to be entered eleven months after the jury's verdict. The parties appealed, and the Mississippi Supreme Court determined that: (1) Ground Control could only pursue quantum meruit damages from Capsco; (2) Ground Control's claims against Yates and Harrah's should be dismissed; (3) Capsco was entitled to a remittitur because the jury's verdict was not supported by the evidence; and (4) the parties could either agree to a $199,096 damages award in favor of Ground Control or proceed to a new trial on

quantum meruit damages. Ground Control has indicated that it wishes to proceed with a new trial in state court.

**B. DECLARATORY JUDGMENT ACTION**

While the case was on remand in state court, Capsco's insurers Greenwich and Indian Harbor filed this declaratory judgment action, alleging that they do not owe a defense or indemnity to Capsco and three additional insureds in the state court action. Ground Control filed a Motion to Dismiss alleging, inter alia, that the declaratory judgment action was not ripe, because a final judgment had not been entered in state court. The Court denied the Motion to Dismiss, because the question of whether the insurers owe a duty to defend can be determined based on the allegations of the complaint and the terms of the insurance policy. The Court also noted that the insurers may be able to demonstrate that there is no duty to indemnify the insureds by demonstrating that they have no duty to defend.

The parties filed cross-motions for summary judgment that solely addressed the duty to indemnify. Because it was then unclear which claims Ground Control would be permitted to pursue in state court and it appeared that the insurers no longer disputed the duty to defend, this Court found that the parties' cross-motions for summary judgment should be denied without prejudice and the declaratory judgment action should be stayed pending the conclusion of the state court action.

Now that the Mississippi Supreme Court has definitively ruled that Ground Control can only pursue a quantum meruit claim against Capsco in state court, the Insurers claim that they do not have a duty to defend Capsco in the upcoming

second trial. This Court granted the Insurers' Motion to Lift the Stay so that the parties could file Motions concerning the Insurers' duty to defend Capsco.

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

### II. CHOICE OF LAW

Since the parties agree that Alabama law governs the insurance policies at issue, the Court will apply Alabama law to determine whether the Insurers have a duty to defend Capsco. (*See* Ground Control's Mem. at 8, ECF No. 136; Insurers' Reply at 4, ECF No. 137).[1]

---

[1] In prior Orders [112, 121], this Court has held that there was no conflict between Alabama law and Mississippi law concerning the issue of when duty to defend and indemnity claims become ripe for review, but the Court has not previously

## III. DUTY TO DEFEND

Under Alabama law, an insurer's duty to defend is broader than the duty to indemnify. *Mid-Continent Cas. Co. v. Advantage Med. Elec., LLC*, 196 So. 3d 238, 243 (Ala. 2015). The question of whether an insurer owes a duty to defend is governed primarily by the allegations contained in the complaint filed against the insured. *Id.* "If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Id.* "Where facts are alleged in the complaint to support a cause of action, it is the facts, not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1012 (Ala. 2005).

"If the complaint against the insured does not, on its face, allege a covered accident or occurrence, other facts which did exist but were not alleged could be taken into consideration to establish coverage because the policy should be liberally construed in favor of the insured." *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1064 (Ala. 2003) (internal quotation marks omitted). "The insurer owes no duty to defend only if neither does the complaint against the insured allege a

---

considered whether Mississippi law and Alabama law conflict as to the issue of whether an insurer owes a duty to defend. Since the parties agree that Alabama law should be applied to this issue, it is not necessary to conduct analysis concerning conflicts of law.

covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence." *Id.* at 1065.

While deciding whether an insurer has a duty to defend its insured, the court must construe the policy "liberally in favor of the insured and strictly against the insurer." *Am. States Ins. Co. v. Martin*, 662 So. 2d 245, 247 (Ala. 1995). "Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company that drafted and issued the policy." *Id.*

The Insurers argue that they do not owe a duty to defend Capsco in the lawsuit filed by Ground Control because Ground Control's remaining claim for quantum meruit does not seek recovery for "property damage" or "bodily injury" as required by the insurance policies at issue. The Insurers also argue that Ground Control's remaining claim does not constitute an "occurrence" under the policies. It is undisputed that no "bodily injury" is alleged in Ground Control's Supplemental Complaint, but Ground Control claims that it has alleged "property damage" caused by an "occurrence."

The policies at issue are commercial general liability (CGL) policies that require the Insurers to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" caused by an "occurrence." (Insurers' Mot., Ex. G at 36, Ex. H at 35, ECF Nos. 131-7, 131-8). The policies further provide that the Insurers "will have the right and duty to defend the insured against any 'suit' seeking those

damages." (*Id.*) "Property damage" under the policies means "[p]hysical injury to tangible property, including all resulting loss of use of that property[,]" as well as the "[l]oss of use of tangible property that is not physically injured." (Insurers' Mot., Ex. G at 49, Ex. H at 48, ECF Nos. 131-7, 131-8). The Alabama Supreme Court has held that "[i]n this context, tangible property (like real estate) is property that is capable of being handled, touched, or physically possessed." *Am. States Ins. Co.*, 662 So. 2d at 248. "Purely economic losses are not included in this definition." *Id.* "[S]trictly economic losses like lost profits, loss of an anticipated benefit or a bargain, and loss of an investment, do not constitute damage or injury to 'tangible' property." *Id.* at 249.

Ground Control argues that portions of its remaining claim against Capsco arose out of property damage, because it is seeking to recover payment for work and materials required to repair property damage to work it had performed on the project. In addition, Ground Control is once again attempting to amend its complaint in the state court action.[2] In its proposed amended complaint, Ground Control claims that it is seeking recovery for loss of use of property that Capsco purchased with funds that belonged to Ground Control. This Court will first consider whether Ground Control has alleged damage to tangible property.

---

[2] Although the Motion to Amend the state court complaint has been pending since May, no ruling has been entered and no hearing has been scheduled on the Motion.

## A. DAMAGE TO TANGIBLE PROPERTY

In its Supplemental Complaint filed in the state court action, Ground Control alleges that it has not been compensated for repairs it performed to its work. Ground Control also claims that it was required to perform other work that was not included in the original project plans. Ground Control is seeking to recover from Capsco for these alleged repairs and additional work. It claims that Capsco received payment from Yates for change orders related to the repairs made by Ground Control, but Capsco never paid Ground Control for the repairs. Ground Control also argues that Capsco is legally obligated to pay for the repair work because it agreed to indemnify Yates and other contractors who caused the damage.

The parties and this Court have not located any Alabama cases addressing the specific question of whether a contractor's failure to pay a subcontractor for repairing damaged work is covered by a CGL policy like the policies at issue here. Nevertheless, cases from other jurisdictions are instructive. For example, in *Westfield Insurance Co. v. Nautilus Insurance Co.*, rain damaged the interior of a school while a subcontractor was installing structural steel and steel decking. *Westfield Ins. Co. v. Nautilus Ins. Co.*, 154 F. Supp. 3d 259, 262 (M.D.N.C. 2016). The project's general contractor hired a company called Afterdisaster to remediate the water damage. *Id.* Afterdisaster sued after the general contractor failed to pay Afterdisaster for the remediation work it performed. *Id.* The general contractor's primary insurer, Westfield, sued the subcontractor's insurer, Nautilus, seeking subrogation for the defense and indemnity it provided to the general contractor. *Id.*

Westfield claimed that the water intrusion constituted an occurrence that caused property damage under the CGL policy at issue. *Id.* at 267. The court rejected this argument because Afterdisaster's lawsuit against the general contractor did not stem from the water intrusion but from the general contractor's "unilateral decision to contract with Afterdisaster for remediation services, and subsequently failing to pay for such services, which caused the state suit against [the general contractor]." *Id.* The court also noted that "Afterdisaster did not suffer property damage and therefore was not seeking damages because of property damage," and the damages Afterdisaster "sought arose out of [the general contractor's] non-accidental failure to honor its contractual obligations, which are purely economic losses in nature." *Id.* Although the contract between Afterdisaster and the general contractor could be traced to property damage, the court found that the general contractor's "subsequent breach of that contract represents a separate and independent act severing the causal connection with the water intrusion event." *Id.* at 271. Therefore, the court held that "[s]uch an indirect connection between Afterdisaster's claims and the rain event [was] insufficient to trigger Nautilus's duty to defend." *Id.*

Similarly, in *Woodcraft Manufacturing Inc. v. Charter Oak Fire Insurance Co.*, a general contractor sued its subcontractor to obtain reimbursement of benefits paid to the subcontractor's employee who was injured on the job. *Woodcraft Mfg. Inc. v. Charter Oak Fire Ins. Co.*, No. 3:08cv455-MCR-EMT, 2009 WL 1329138, at *3 (N.D. Fla. May 12, 2009). The general contractor had been required to pay the

-10-

benefits as a result of the subcontractor's failure to obtain workers' compensation coverage as required by the parties' subcontract. *Id.* at *1-*2. The subcontractor sought coverage from its insurer, claiming that the general contractor was seeking damages for bodily injuries. *Id.* at *3. The court explained that while the employee's "physical injury formed the background for" the general contractor's lawsuit, the general contractor sued "because it was forced to pay the workers' compensation benefits . . . the subcontractor had been contractually obligated to cover with insurance but failed to obtain." *Id.* As a result, the court held that the general contractor's claims were based on economic loss rather than bodily injury. *Id.*

According to Ground Control's Supplemental Complaint, Capsco, Yates, and Harrah's directed Ground Control to perform repairs on work that had previously been completed at the project site. (Insurers' Mot., Ex. A at 7-8 (¶¶ 12-14), ECF No. 131-1). Ground Control further asserts that it has not been compensated for these repairs. (*Id.*) Ground Control's proposed amended complaint contains similar allegations. (Ground Control's Mot., Ex. C at 6-8 (¶¶ 9-13), ECF No. 127-3).

Ground Control also asks the Court to consider testimony given by its president Frank Beaton and its field supervisor Kenneth Kossow. Beaton testified that Ground Control only agreed to repair the damaged work because Yates promised to pay Ground Control for performing the repairs.[3] (*See generally* Ground

---

[3] The Insurers argue that Capsco is not liable for the repairs directed by Yates or the damage caused by other contractors. As that is a matter for the state court to

-11-

Control's Mot., Ex. E, ECF No. 127-6). He testified that Ground Control was not otherwise obligated to perform the repairs. (*Id.*) Both Kossow and Beaton testified that Ground Control's repair work was accepted by Yates, but Ground Control was never paid as promised by Yates. (*See generally* Ground Control's Mot., Ex. D, E, F, G, ECF Nos. 127-4, 127-5, 127-6, 127-7, 127-8).

The allegations of Ground Control's complaints as well as the testimony of Beaton and Kossow indicate that Ground Control did not suffer any damages as a result of the property damage. Ground Control suffered damages as a result of acts committed by Capsco and/or Yates after the property damage occurred. Since Ground Control is seeking payment for work it performed for Yates and/or Capsco, its alleged damages are purely economic in nature. Thus, Ground Control's claims that it did not receive payment for repairing damaged work or performing other extra-contractual work do not constitute covered "property damage" under the policy language. Ground Control itself suffered no "damage to tangible property"; it merely suffered an economic loss when Yates and/or Capsco allegedly failed to pay Ground Control as agreed. Yates' and/or Capsco's alleged breach of the agreement to pay Ground Control for performing the repairs "represents a separate and independent act severing the causal connection" between the property damage and Ground Control's claims. *See Westfield*, 154 F. Supp. 3d at 271. As a result, the

---

decide, this Court will assume for the purposes of this Motion that Capsco is liable for the repairs and damages at issue.

connection between the property damage and Ground Control's claims is too tenuous to create a duty to defend under the policies.

**B. LOSS OF USE**

Ground Control also alleges that it has asserted claims for covered loss of use under the policies. The policies' definitions of "property damage" include "[l]oss of use of tangible property that is not physically injured." (Insurers' Mot., Ex. G at 49, Ex. H at 48, ECF Nos. 131-7, 131-8). Ground Control's Supplemental Complaint does not specifically mention any loss of use of tangible property. However, Ground Control relies on testimony given by Beaton, as well as allegations in its proposed amended complaint.

At trial, Beaton testified that Capsco deducted funds from checks paid to Ground Control to purchase pipe from a company called Ferguson and laser sighting equipment from a company called ICM. (Ground Control's Mot., Ex. E at 677-78, 684, ECF No. 127-5). Beaton testified that Ground Control did not have an agreement with Capsco to pay for the pipe and Ground Control did not purchase the pipe from Ferguson. (*Id.* at 678). He also testified that the funds for the laser were taken without Ground Control's permission, and as far as he knew, Capsco retained possession of the laser. (*Id.*) In an affidavit, Beaton claims that Capsco told him that Ground Control is the owner of the laser and promised to deliver the laser to Ground Control's office. (Ground Control's Mot., Ex. D at 11, (¶15), ECF No. 127-4). He also testified that Capsco's representatives had assured Beaton that Ground Control would retain an ownership interest in the pipe and other materials Capsco

-13-

purchased from Ferguson and "that Capsco would pay Ground Control for its interest in these materials once the outstanding pay applications were paid by Yates." (*Id.* at 9 (¶9)).

In its proposed amended complaint, Ground Control alleges that "Capsco arbitrarily and without consent deducted from these vested earnings the sum of $358,367.98 for the purchase of the piping material." (Ground Control's Mot., Ex. C at 8 (¶14), ECF No. 127-3). It further alleges that "Ground Control suffered the loss of this piping material and its use when its [sic] was transferred by Capsco without any compensation or reimbursement to Ground Control for its interest in these materials." (*Id.* at 9 (¶14)). The proposed amended complaint contains similar allegations concerning the laser sighting device. (*Id.* at 9 (¶15).

Even if allegations of this nature could be considered "loss of use of tangible property" under the policies, these allegations do not constitute an "occurrence" under the policies. The policies provide that an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Insurers' Mot., Ex. G at 48, Ex. H at 48, ECF Nos. 131-7, 131-8). The Alabama Supreme Court has utilized the following definitions of "accident" for determining whether facts alleged constitute an occurrence: (1) "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated;" and (2) "something unforeseen, unexpected, or unusual." *Hartford Cas. Ins. Co.*, 928 So. 2d at 1012. It is completely foreseeable that if Capsco deducted funds without permission and

failed to reimburse those funds that Ground Control would be expected to suffer damages. Capsco's alleged action in deducting funds from Ground Control's checks without permission and then failing to either return the funds or the property to Ground Control is intentional conduct that cannot be considered an "occurrence" under the policies. Therefore, Ground Control's allegations of loss of use, even when supplemented by testimony from Beaton, do not pertain to a covered "occurrence" under the policies, and the Insureds do not have a duty to defend Capsco in the upcoming trial to determine the amount of quantum meruit damages owed to Ground Control.

## CONCLUSION

For the foregoing reasons, the Court finds that the Insurers do not have a duty to defend Capsco in the state court lawsuit filed by Ground Control. To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter this result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Partial Summary Judgment [131] filed by Plaintiffs/Counter-Defendants Greenwich Insurance Company and Indian Harbor Insurance Company is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [127] filed by Defendant/Counter-plaintiff Ground Control is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 18th day of August, 2017.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE